UNITED STATES *v.* NEW YORK MERCHANDISE CO., INC.

and

NEW YORK MERCHANDISE CO., INC. *v.* UNITED STATES

**No. 5702.**—Invoice dated Yokohama, Japan, September 21, 1939.
Entered at New York, N. Y., October 24, 1939.
Entry No. 742324.

(Decided August 24, 1942)

*Paul P. Rao,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the United States.
*Siegel & Mandell* (*Sidney Mandell* of counsel) for the importer.

OLIVER, Presiding Judge: This appeal to reappraisement involves the proper dutiable value of certain electric-light bulbs exported from Japan and entered at the port of New York.

The case is before me as a cross-appeal. The importer has appealed from the advance of its entered value by the appraiser, and the collector has appealed from the value found by the appraiser to correct an error in computation. The merchandise was entered at 2.80 yen

per 100 pieces, less inspection fees. Appraisement was made at $16.544 per thousand pieces, packed. In the appeal filed by the collector, claim is made that the proper dutiable value is $18.517 per thousand pieces.

On the trial, the following facts were stipulated between counsel for the respective parties:

(1) That there is neither a foreign value nor an export value, as such values are defined in section 402 (c) and (d), respectively, for the merchandise in question.

(2) That if United States value, as such value is defined in section 402 (e), is found to be the proper basis for appraisement then the value claimed by the collector, to wit, $18.517 per thousand pieces, is such United States value.

(3) That if cost of production, as such value is defined in section 402 (f), is found to be the proper basis for appraisement, then the importer's entered value of 2.80 yen per 100 pieces, is such cost of production.

By virtue of the above-stipulated facts, the issue herein has been narrowed to the question whether United States value or cost of production is the proper basis for appraisement of these electric-light bulbs.

The evidence adduced herein consists of the oral testimony of one witness who appeared on behalf of the importer, and a special agent's report that was introduced by counsel for the Government and admitted as exhibit 1. The latter is devoted to a discussion of the possible existence of an export value for this merchandise, and in view of the issue before me, as hereinabove set forth, this report has no probative value in the present case.

The witness who appeared on behalf of the importer testified that he had been in charge of the electrical division of the importing corporation for the past 16 years in which capacity he managed all of the affairs of that department, including the supervision of purchases and sales.

He described these lamps as "XL" shunt Christmas lamps. Christmas lamps ordinarily operate eight in a line, but these particular lamps are equipped with a so-called "shunt" feature which controls the current so that it is distributed among the remaining seven lamps when one of a line becomes burned out. The witness testified that his concern has the patent on the so-called "shunt" feature of these lamps, and that these lamps differed in their method of construction and the quality of workmanship employed therein from other shunt filament lamps offered by other importing firms. The "XL" shunt lamps under consideration contain a small tube that holds a substance known as "gelano" whereas other shunt lamps use a powder similar to iron ore that is distributed in the cement base of the lamp.

The "XL" shunt lamps are imported in five different colors, to wit, white, blue, green, red, and orange, and are always on display in the importer's place of business. They are seasonable items that are used around Christmas time. The importer's witness testified that he orders these electric-light bulbs in very large quantities based on sales made in previous periods, and that his orders are placed sometimes as early as November or December of the previous year "so as to give the factory a chance to have a continuous operation." He stated that the principal market for this merchandise is New York City, and that his concern sells these articles at wholesale in this country to "jobbers, national chain stores and even retailers." Orders from firms to whom the merchandise is sold are received from February to July and deliveries are begun in July, extending to October.

Exportation of the merchandise at bar was made from Yokohama, Japan, on September 21, 1939, and importer's witness testified that prototype merchandise had been imported by his firm during that year and deliveries made to customers here up to August, 1 month previous to the time the merchandise at bar was exported. This witness further stated that at the time of exportation of the shipment in question there were available in the importer's warehouse 10,000 of these "shunt" lamps, all of which were red in color. The witness testified that these 10,000 red lamps were to be used for partially filling orders previously placed and which aggregated 883,000 lamps.

It is the contention of the importer that since the 10,000 red lamps, which were being held in its warehouse, had been previously committed they were not available for sale when the instant merchandise was exported, and therefore, at the time of exportation of the shipment under consideration there was no prototype merchandise freely offered for sale in the principal market of the United States.

The theory advanced by the importer in this case is based on the rule laid down by the appellate court in the case of *United States* v. *Sheldon & Co.*, 23 C. C. P. A. (Customs) 245, T. D. 48108. Referring to United States value, the court, in that case, said (p. 249):

\* \* \*. The said value is the price at which such or similar imported merchandise is *freely offered for sale*, packed, in the principal market of the United States, to all purchasers, *at the time of exportation*, of the merchandise which is being valued. This could, of course, be established only by such or similar goods which had been previously imported and were being freely offered for sale at the time of export of the goods being valued.

That rule was followed by the court in a later case in the matter of *Stern Hat Co.* v. *United States*, 26 C. C. P. A. (Customs) 410, C. A. D. 48. That case involved certain men's fur felt hats exported from Italy and imported at the port of Cleveland, Ohio. It was there established of record that the hats in question were a type of merchandise that was not carried in stock by the importer, but were sold

only on special orders for future delivery. Each order set forth specifications of the hats desired by the customer and delivery was made approximately 3 months after the date of the order. The court held that there was no United States value for the merchandise there in question and based its conclusion on a finding that there had been no sales of previously imported prototype merchandise on or about the date of exportation of the merchandise before the court.

The authority cited by counsel for the importer in their brief as the one on which they principally rely in support of their claim that no statutory United States value existed for the electric-light bulbs in question is the case of *United States* v. *Collin & Gissel*, 29 C. C. P. A. 96 (Customs), C. A. D. 176. The merchandise involved in that case consisted of a machine for washing beer barrels. It was found that the importer did not keep a stock of these machines on hand in the United States, but contracted with customers here for the sale thereof and then placed the order with the foreign manufacturer. The evidence established that at the time of exportation of the machine there involved, no prototype merchandise, previously imported into the United States, was being freely offered for sale. Following the rule laid down in the *Sheldon & Co.* case, *supra*, and the *Stern Hat Co.* case, *supra*, the court held that no United States value existed for the merchandise there under consideration, and said:

> The statute defining United States value explicitly states, "The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale * * * in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise * * * ," and it was definitely construed by us in the *Sheldon & Co.* case, *supra*, in the manner already stated. Clearly, had the importation here involved been a first importation of the particular type of merchandise at issue no United States value could be determined under the statutory definition which Congress adopted and, there being no prototype machine in the United States *at or near the date of exportation of the involved machine* available for offer, a fundamental element of United States value, as defined by the statute, was lacking. [Italics ours.]

It is important to note that the two different kinds of merchandise involved in the *Stern Hat Co.* case, *supra*, and the *Collin & Gissel* case, *supra*, were not carried in stock by the importers of such merchandise. The hats involved in the *Stern Hat Co.* case and the machine in the *Collin & Gissel* case were sold under specifications to suit requirements of customers in the United States, and orders were not placed with the foreign manufacturers until after a contract had been entered into by the parties concerned in this country. The electric-light bulbs under consideration in the present case are handled as a standard item with the importer herein. The importer tries to maintain a stock of these articles throughout the season in which they are bought and sold. They are items which are always

on display at the importer's premises. It is fair to assume from the record herein that the only reason prototype merchandise was not offered or sold at the time of exportation of the shipment in question was because the foreign exporter was delinquent in shipments on orders previously placed. Certainly, such a condition cannot constitute a basis for the absence of a United States value, as contemplated by the statute. There is further support for the statement that these electric bulbs are a current item with the importer from the testimony of its witness that identical merchandise had been sold and delivered to customers in the United States within the month just previous to that in which the merchandise at bar was exported.

The evidence before me is sufficient, in my judgment, to establish that previously imported merchandise, the same as that involved herein, was sold near the date of exportation of the shipment under consideration. Under the principle enunciated by the Court of Customs and Patent Appeals in the three authorities cited herein, the price at which the prototype merchandise was offered for sale at that time is its United States value, as such value is defined in section 402 (e) of the Tariff Act of 1930. It has been conceded that such United States value for the merchandise at bar is $18.517 per thousand pieces.

On the basis of the record herein, I find as a matter of fact:

(1) That the merchandise in question consists of electric-light bulbs exported from Japan and entered at the port of New York.

(2) That at the time of exportation thereof there was neither a foreign value nor an export value, as such values are defined in section 402 (c) and (d) of the Tariff Act of 1930, for such or similar merchandise.

(3) That the proper basis of appraisement for these electric-light bulbs is United States value as such value is defined in section 402 (e) of the Tariff Act of 1930.

(4) That such United States value is $18.517 per thousand pieces.

Accordingly, I hold as matter of law that the proper basis of appraisement for the electric-light bulbs covered by the importation in question is United States value, as such value is defined in section 402 (e) of the Tariff Act of 1930; and that such United States value is $18.517 per thousand pieces.

Judgment will be rendered accordingly.